McIlquham, Respondent, vs. Barber and others, Appellants.

*October 28 — December 6, 1892.*

*Contracts: Construction: Sale of logs: Competency of scaler: Amendment of pleading: Terms.*

1. A contract for the sale of one million feet of logs provided that the vendees should pay therefor "$12 per thousand feet, as follows: $7,500 when the logs are delivered at the mill; $2,500 April 1, 1891; and the balance after lumber is loaded on boat. . . . It is expressly agreed that said payment of $12 per thousand feet is to be based on the log scale, which scale shall be made by a competent person. . . . Second parties [vendees] agree to pay $25 per thousand feet for all thick shop and better, and $10 per thousand feet for balance of lumber, mill culls out; and all net gain at prices mentioned is to be paid to the party of the first part on last payment; insurance and inspection expenses to come out of lumber." As an *addendum*, the vendor subsequently agreed that if there was not then one million feet of merchantable logs at the mill, he would make good that quantity to the vendees. *Held*, that all payments were to be made on the basis of the log scale unless the lumber scale should overrun the log scale, in which case the vendees should pay for the excess or net gain as provided.

2. The insurance and inspection expenses were to be deducted from the purchase price whether there was any overrun or not.

3. The scaler of the logs was a competent person, within the meaning of the contract, if he was as competent as men employed in that capacity ordinarily are.

4. In an action for the price of the logs, it was within the discretion of the trial court to require defendants to pay $25 costs as a condition of amending their answer so as to allege a subsequent agreement that the lumber scale should be the basis of settlement between the parties.

APPEAL from the Circuit Court for *Ashland* County.

The action was brought to recover the purchase price of 1,280,390 feet of pine saw logs alleged to have been sold and delivered by plaintiff to defendants prior to July 5,

1891, under a written contract dated January 23, 1891, the principal provisions of which are as follows:

" The first party hereby sells and agrees to deliver, as hereinafter set forth, to the parties of the second part, one million feet of pine saw logs, cut or to be cut on sections 10 and 14, township 44 north, of range 1 west, in Ashland county, Wisconsin, during the present logging season; said logs to be delivered on board of cars to be furnished by the parties of the second part on the switch built by the party of the first part and one Bernhard Lynch, connected with the main line of the Wisconsin Central Railroad, near Plummer, Wisconsin, in township 45 north, range 1 west. The logs shall be stamped on the end MC. Said logs to be loaded on cars between the date of this agreement and the 15th of February, 1891. The parties of the second part agree to pay for said logs, so delivered, $12 per thousand feet, payments to be made as follows: $7,500 when the logs are delivered at the mill in Ashland, Wisconsin, at which they are to be sawed; $2,500 April 1, 1891; and the balance after lumber is loaded on boat,— on five-day sight draft,— but not to be shipped later than July 1, 1891. It is expressly agreed between the parties hereto that said payment of $12 per thousand feet is to be based on the log scale, which scale shall be made by a competent person, to be chosen by the parties to this contract; that each of the first two payments above mentioned shall be made on a draft drawn by the first party on the second parties at three days' sight; that the parties of the first part shall have a lien upon said logs and lumber to be manufactured therefrom for the unpaid purchase price that may at any time be due hereunder. Second parties agree to pay $25 per thousand feet for all. thick shop and better, and $10 per thousand feet for balance of lumber, mill culls out; and all net gain at prices mentioned is to be paid to the party of the first part on last payment; insurance and inspection

McIlquham vs. Barber and others.

expenses to come out of lumber; logs not to take more than three to the thousand feet. The wages of the man who scales the logs is to be shared equally by parties to this contract."

It appears that an *addendum* to said contract was executed by the parties February 24, 1891, as follows: " Annex to a certain log contract, made and concluded the 23d day of January, 1891, by and between *John McIlquham*, of Chippewa Falls, Wisconsin, and *Barber, Scully & Co.*, of Dunkirk, New York, to wit, that the said *John McIlquham* claims that at the present time there is one million feet merchantable logs delivered at mill according to aforesaid contract, and there is due on said contract $7,500; and on payment of said $7,500 said *John McIlquham* does hereby agree and guaranties that, in case there is not the one million feet of merchantable logs at mill, that he will make said million feet good to *Barber, Scully & Co.*" And defendants claim that the logs were scaled by one Mc-Arthur, an incompetent scaler, without the consent of defendants, and that thirty per cent. of the logs scaled by him were unmerchantable. They also claim that only 1,025,169 feet of logs were delivered under the contract; that they have paid $10,000 on the contract price, also $225.89 for insurance and $256.29 for inspection fees; and that there is only due the plaintiff $1,896.36, with interest from July 5, 1891; for which sum and costs they tendered judgment.

At the close of the trial a special verdict was found by the jury, as follows: " (1) How many feet of pine saw logs, wood scale, were sold and delivered by plaintiff to defendants? *Answer* (by the court). 1,280,390 feet. (2) Were all of the logs delivered by plaintiff and received by defendants delivered and received under the contract described in the complaint, at the price of $12 per M.? *A.* Yes. (3) Did the parties to this action agree upon a scaler,

under said contract, to scale all of said logs? *A.* Yes. (4) If so, was the person agreed upon a competent person to scale the same? *A.* Yes. (5) Did the said scaler who scaled said logs make a correct scale thereof? *A.* Yes. (6) How many feet of merchantable logs, in all, did plaintiff deliver to defendants? *A.* 1,280,390 feet. (7) How many feet of logs, if any, manufactured into common lumber, were delivered by plaintiff to defendants, in excess of those delivered under the said contract at $12 per thousand? *A.* No answer. (8) How many feet of logs, if any, manufactured into thick shop or better, were delivered by plaintiff to defendants in excess of those delivered under the said contract at $12 per thousand? *A.* No answer. (9) How much money have defendants paid plaintiff on said logs sold and delivered? *A.* (by the court). $10,000. (10) How much money did defendants pay for insurance and inspection fees, respectively, on the lumber sawed from said logs? *A.* (by the court). For insurance, $225.89; for inspection fees, $256.29."

Upon this verdict judgment was ordered and rendered, for the value of 1,280,390 feet of logs at $12 per M., less the payment of $10,000, with interest from July 6, 1891, amounting to $5,657.91, from which judgment defendants appeal.

For the appellants there was a brief by *Dockery & Kingston*, and oral argument by *E. J. Dockery*.

For the respondent there was a brief by *Lamoreux, Gleason, Shea & Wright*, and oral argument by *E. F. Gleason*.

WINSLOW, J. The circuit judge construed the contract to mean that the defendants were to pay $12 per 1,000 feet for all logs delivered under it, and that the number of feet was to be determined by the log scale. The defendants claim that the contract simply prescribed the log scale as the basis upon which first payments were to be made, in

order to guard against overpayment, and that final payment was to be determined by the lumber scale when the lumber was shipped.

We think the interpretation of the circuit judge was right. The contract seems to be very clear and emphatic in its terms as to the amount to be paid, the times when payment is to be made, and the measurement which shall control. It reads: " The parties of the second part agree to pay for said logs so delivered $12 per thousand feet, payments to be made as follows: $7,500 when the logs are delivered at the mill in Ashland, Wisconsin, at which they are to be sawed; $2,500 April 1, 1891; and the balance after lumber is loaded on boat,— on five-day sight draft,— but not to be shipped later than July 1, 1891. It is expressly agreed between the parties hereto that said payment of $12 per thousand feet is to be based on the log scale, which scale shall be made by a competent person, to be chosen by the parties to this contract." It would seem that language could hardly make it more certain that payment for the logs was to be made on the basis of the log scale. Nor does the *addendum* or annex to the contract executed in February purport to change the basis on which payment is to be made. That seems simply to be a guaranty that the full amount of 1,000,000 feet of logs would be delivered, if it had not already been delivered.

The defendants, however, rely upon the following clause of the contract as tending to modify the positive agreement that the log scale should govern the amount of the payments, and as showing that the parties contemplated that the final settlement should be made according to the amount of lumber which was manufactured from the logs, viz.: " Second parties agree to pay $25 per thousand feet for all thick shop and better, and $10 per thousand feet for balance of lumber, mill culls out; and *all net gain* at prices mentioned is to be paid to party of the first part on last

McIlquham vs. Barber and others.

payment; insurance and inspection expenses to come out of lumber." On the other hand, plaintiff contends that the term "net gain," in this clause, means the gain in sawing over the log scale, and that this clause means that if there should be any such gain,— that is, if the lumber scale overran the log scale,— then for the amount of such overrun the plaintiff was to be paid at the rate of $25 per 1,000 for thick shop and better, and $10 for the balance, excluding mill culls. The circuit judge adopted this latter view; and, while it must be confessed that the meaning intended is not as clear as could be desired, we think the view taken by the circuit judge is the more reasonable, and we hold it to be correct. The circuit judge also held that the insurance and inspection expenses named in the last clause above quoted were only to be deducted in case there was an overrun or gain in the lumber scale over the log scale, and so did not allow the defendants any credit therefor. In this we think he erred. Plainly the contract contemplated insurance and inspection. It authorized the defendants to incur these charges, and we see no good reason for holding that merely because there was no overrun, or because plaintiff chose to waive any claim that there was an overrun, the defendants can be required to pay these expenses which the contract authorized him to make and take out of the lumber. The clause seems to mean that the insurance and inspection expenses, incurred while the question as to whether there will be a gain or not is in process of determination, shall be deducted from the purchase price, regardless of the fact whether any gain is finally discovered or not.

In course of the trial defendants asked leave to amend the answer by alleging that a subsequent agreement was made between the parties that a lumber scale should be made and used as the basis of settlement between the par-

ties.    The court allowed the amendment on condition of paying $25 costs, whereupon defendants excepted to that part of the order imposing costs, and withdrew the amendment.    This ruling is assigned as error.    The granting of leave to make the amendment, and the terms thereof, are both within the sound discretion of the court, and we cannot say there has been an abuse of that discretion in this case.

One question submitted to the jury was whether McArthur was a competent scaler, and upon this question the circuit judge charged the jury as follows: " It is for you to say, from the whole evidence, whether this man was a competent scaler,— I do not mean such a person as would commit no mistakes or errors in rejecting logs that he ought to have accepted, or accepting logs that he ought to have refused or rejected; but the question is whether this man was an average man,— whether he was as competent as such men ordinarily are who are employed in that capacity."    It is claimed that this was erroneous, as fixing too low a standard of competency.    We cannot agree with the criticism. We think that, if the scaler was as competent as men ordinarily are who are employed in that capacity, he was competent, within the meaning of the contract.

Exception was taken to remarks made by plaintiff's counsel upon the argument to the jury.    It is not deemed necessary to set forth the remarks at length.    They consisted mainly of comments upon the fact that one Kennedy, whom defendants had procured to make a test scale, was not called as a witness.    Admitting that they were in any respect improper, we should not feel justified in reversing the judgment upon that ground.

No other points demand attention.    The only error we find is in not allowing defendants the insurance and inspection expenses as payments on the price of the lumber.    The

Sheanon vs. The Pacific Mutual Life Ins. Co.

amounts are fixed by the special verdict, and upon return of the record they may be credited to defendants without new trial.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.